NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 6, 2023

S23A0620. RUTHENBERG v. THE STATE.

BOGGS, Chief Justice.

Appellant Kaylynn Shiquez Ruthenberg was convicted of malice murder and other crimes arising from the shooting death of James Jones and the robbery of Samuel Gallardo. Appellant contends that the trial court erred in admitting evidence of his three prior misdemeanor convictions for simple battery under OCGA § 24-4-418 and that the admission of this evidence violated OCGA § 24-4-403. Because Appellant has failed to carry his burden to show plain error, we affirm.[1]

---

[1] Jones was killed on the evening of February 9, 2015, and Gallardo was robbed early on February 10, 2015. On April 30, 2015, a Cobb County grand jury indicted Appellant, along with Jordan Baker and Jonathon Myles, for the malice murder of Jones, three counts of felony murder, aggravated assault with a deadly weapon, armed robbery, possession of a firearm during the commission of a felony, robbery by force of Gallardo, and two counts of violating

1. The evidence at trial showed as follows. Appellant, Jordan Baker, and Jonathon Myles knew each other for years and saw each other daily. In early 2015, Baker began running a robbery scam on Craigslist. Baker would post ads for cell phones, and when interested buyers replied, he would set up a meeting in the Jamaica Cove neighborhood of Cobb County where he and Myles both lived. When prospective buyers arrived, he would show them an empty cell phone box, and when they produced the money for the phone, he would snatch it from them and run away using shortcuts through

---

the Georgia Street Gang Terrorism and Prevention Act, OCGA §§ 16-15-1 to 16-15-11. The indictment also charged Appellant and his co-indictees with the attempted robbery of Thomas Tuffa. Baker and Myles waived their right against self-incrimination under the Fifth Amendment to the United States Constitution and agreed to testify against Appellant in the hope that the State later would reduce the charges against them. At a trial from October 31 to November 7, 2017, the jury acquitted Appellant of the attempted robbery of Tuffa but found him guilty of the remaining charges. On November 20, 2017, the trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder, a total of 25 years consecutive for robbery by force and the firearm-possession offense, and concurrent terms of 20 years for armed robbery and 15 years each for the two counts of street gang terrorism. The felony murder counts were vacated by operation of law, and the count of aggravated assault with a deadly weapon merged. On the same day, Appellant filed a motion for new trial, which he amended with new counsel on July 10, 2019. After a hearing on August 1, 2019, the trial court entered an order denying the motion on September 10, 2019. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2023 term and submitted for decision on the briefs.

the neighborhood. Baker almost got caught once, so he enlisted Appellant and Myles, whom he knew to be in the Crips gang, to help him.

On February 9, 2015, Baker and Myles picked up Appellant from his apartment complex on the other side of town and returned to their neighborhood. Jones had responded to one of Baker's ads and was scheduled to come by that evening. Appellant, Baker, and Myles discussed robbing Jones and agreed to split the proceeds. When Jones arrived at the address on Jamaica Cove that Baker had given him, Baker approached Jones's car alone while Appellant and Myles stayed back. Baker got into the front passenger seat of Jones's car, leaving the door open.

After a couple of minutes, Appellant approached the front passenger-side door, and Baker told him that Jones was not falling for the scam. Appellant then pulled out his .45-caliber Glock pistol and pointed it at Jones. When Jones tried to drive off, Appellant fired a shot that struck Jones on his right shoulder and went through his left carotid artery. As the car sped forward, Baker

3

jumped out, and the car crashed into a vehicle in a yard and then into a tree. Appellant, Baker, and Myles initially fled, but at Appellant's direction, Baker and Myles accompanied Appellant back to the car, where they took Jones's shoes and cell phone. Appellant grabbed Jones's cell phone from Myles and fired another shot that struck Jones on the right side of the neck and exited out the left side of his head. As Appellant, Baker, and Myles ran from the scene, Myles dropped the shoes. Jones was dead from his gunshot wounds by the time responding officers arrived at the scene. Surveillance footage from a house on Jamaica Cove showed three figures illuminated by a light running from the direction of Jones's car near the time of the shooting.

Appellant, Myles, and Baker went to Appellant's apartment later that evening. Between midnight and 12:30 a.m. on February 10, 2015, they left the apartment to walk to a nearby store to buy cigarettes. While they were out walking, they came across Gallardo, who was waiting for a taxi outside a restaurant that had just closed. Appellant said, "let's rob him," and told Baker and Myles to subdue

4

Gallardo and take his wallet. Baker knocked Gallardo to the ground and held him down while Myles took his wallet. Appellant, Baker, and Myles then ran toward Appellant's apartment, but a police officer responding to a different incident spotted them. Appellant made it back to his apartment, but the officer and his partner detained Baker and Myles and found Gallardo's wallet on the ground nearby.

Baker and Myles were taken in separate vehicles to police headquarters, where they were put in different rooms and advised of their rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), which each then waived. After initially denying any involvement, Baker and Myles said that it was Appellant's idea to rob Gallardo, and they both identified Appellant as the person who shot Jones. Baker also said that Appellant and Myles were associated with the Crips gang. Myles was carrying a neatly folded blue bandana.

Based on the information from Baker and Myles, the police brought Appellant to police headquarters, where he was interviewed

5

after being advised of his *Miranda* rights and waiving them. A video recording of Appellant's interview was later played at trial. Appellant, who was carrying a neatly folded blue bandana, acknowledged that he was present at the start of the confrontation between Baker and Myles and Gallardo but claimed he immediately ran off and was not involved in the robbery. Appellant admitted that he knew about the Craigslist scam, that he talked to Baker about robbing Jones, that he was present when Jones crashed his car, that he heard gunshots, and that after running away, he went back to the car, where Myles took Jones's shoes. Appellant repeatedly denied shooting Jones and denied even owning a gun.

While Appellant was being interviewed, the police were searching his apartment pursuant to a search warrant. During the search, the police found Jones's cell phone, Appellant's .45-caliber Glock pistol, and another neatly folded blue bandana. When Appellant was told about the gun found in his apartment, he admitted that he was the person who shot Jones but claimed that he only shot Jones once. He denied shooting Jones in self-defense and

6

said that he shot Jones by accident. Ballistics testing later matched two shell casings recovered from Jones's car to the pistol found in Appellant's apartment, and Appellant's DNA was found on the pistol's handle. A fingerprint from the interior of the front passenger-side door window of Jones's car was matched to Appellant.

At trial, Myles testified that Appellant directed the attack on Gallardo, and Baker and Myles both testified that Appellant shot Jones. Myles acknowledged that he and Appellant were associated with the Crips gang, that Appellant brought him into the gang, and that Appellant was responsible for guiding him and telling him what to do. The State's gang expert testified that the color blue is associated with the Crips, that Crips members often carry neatly folded blue bandanas to signify to others that they are members of the gang, and that the neatly folded blue bandanas found on Myles and Appellant and in Appellant's apartment were indicators that they were Crips members. The expert further testified that murder, aggravated assault, and armed robbery are the types of crimes

7

committed by the Crips. The State introduced certified copies of Appellant's three prior misdemeanor convictions for simple battery, which were based on guilty pleas.[2]

2.    Appellant contends that the trial court erred in admitting evidence of his three prior misdemeanor convictions for simple battery under OCGA § 24-4-418, because the State presented no evidence that he was in a gang when he committed the prior crimes or that he committed them to further the interests of a gang.[3]

---

[2] One of the battery convictions was accompanied by a conviction for misdemeanor obstruction of a 911 call, but Appellant's arguments focus on the battery convictions.

[3] OCGA § 24-4-418 states:

(a)    In a criminal proceeding in which the accused is accused of conducting or participating in criminal gang activity in violation of Code Section 16-15-4, evidence of the accused's commission of criminal gang activity, as such term is defined in Code Section 16-15-3, shall be admissible and may be considered for its bearing on any matter to which it is relevant.

(b)    In a proceeding in which the prosecution intends to offer evidence under this Code section, the prosecutor shall disclose such evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least ten days in advance of trial, unless the time is shortened or lengthened or pretrial notice is excused by the judge upon good cause shown.

(c)    This Code section shall not be the exclusive means to admit or consider evidence described in this Code section.

However, Appellant did not object to the admission of this evidence on this ground before or during trial, so we review this claim only for plain error. See *Mann v. State*, 307 Ga. 696, 704 (838 SE2d 305) (2020) (applying plain error review where the basis on which the evidence had been challenged at trial was not the same basis on which the evidence was challenged on appeal).

To show plain error, Appellant must point to an error that was not affirmatively waived, that was clear and obvious beyond reasonable dispute, that affected his substantial rights, and that seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Lupoe v. State*, 300 Ga. 233, 243 (794 SE2d 67) (2016). The third component of this test requires a defendant to make an "affirmative showing" that the error probably did affect the outcome below. Id. (cleaned up). "Satisfying all four prongs of this standard is difficult, as it should be." Id. (cleaned up).

---

As relevant here, OCGA § 16-15-3 (1) (J) defines "criminal gang activity" to include the commission of "[a]ny criminal offense in the State of Georgia . . . that involves violence, . . . whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed."

Appellant has not made an affirmative showing that any error in admitting the evidence of his three prior misdemeanor convictions for simple battery under OCGA § 24-4-418 likely affected the outcome of his trial. Appellant's argument for harm focuses on the fact that this is a murder case and his prior convictions were for crimes of violence. But the evidence of Appellant's guilt for the murder of Jones was overwhelming. He admitted that he shot Jones. His fingerprint was found inside Jones's car. His DNA was found on the gun that matched the shell casings in Jones's car. The murder weapon and Jones's cell phone were recovered from his apartment the morning after the shooting. And his friends Baker and Myles both identified him as the shooter before and during trial. Thus, Appellant has failed to demonstrate that any error in admitting the evidence of his three prior misdemeanor convictions for simple battery likely affected the outcome of his trial. See *Tyner v. State*, 305 Ga. 326, 331 (825 SE2d 129) (2019) (holding that the defendant failed to satisfy the third part of the plain error test in light of the overwhelming evidence of his guilt). Accordingly, he has not carried

his burden to show plain error as to this claim. See *Jones v. State*, 314 Ga. 466, 469 (877 SE2d 568) (2022) ("We need not analyze all of the elements of th[e] [plain error] test when . . . the defendant has failed to establish one of them." (cleaned up)).[4]

3.  Appellant also contends that the admission of the evidence of his prior convictions violated OCGA § 24-4-403, because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and confusion of the issues.[5] Contrary to Appellant's assertion, he did not object to the admission of this evidence based on OCGA § 24-4-403 at any time before or during

---

[4] Appellant's first enumeration of error mentions the alleged lack of a hearing, the absence of a limiting instruction, and due process, but in the accompanying argument section, he does not mention a hearing or a limiting instruction and refers only in passing to due process, making no substantive argument regarding these matters. Accordingly, any claim on these grounds is deemed abandoned. See Supreme Court Rule 22 ("Any enumerated error not supported by argument . . . in the brief shall be deemed abandoned. . . .").

[5] OCGA § 24-4-403 states:
  Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11

trial. Thus, we review this claim only for plain error. See *Mann*, 307 Ga. at 704.

Appellant has not made an affirmative showing that any error in admitting the evidence of his prior convictions in violation of OCGA § 24-4-403 likely affected the outcome of his trial. Again, Appellant's argument for harm focuses on the fact that this is a murder case and his prior convictions were for crimes of violence. But as we explained above in Division 2, the evidence of Appellant's guilt for the murder of Jones was overwhelming, including his admission to shooting Jones, his fingerprint inside Jones's car, his DNA on the gun that matched the shell casings in Jones's car, the discovery of the murder weapon and Jones's cell phone in Appellant's apartment the morning after the shooting, and the incriminating pretrial statements and trial testimony of Baker and Myles. Thus, Appellant has failed to demonstrate that any error in admitting the evidence of his three prior misdemeanor convictions for simple battery likely affected the outcome of his trial. See *Tyner*,

305 Ga. at 331. Accordingly, he has not carried his burden to show plain error as to this claim.

*Judgment affirmed. All the Justices concur.*