315 Ga. 214
FINAL COPY

S22A1068.  CARTER v. THE STATE.

COLVIN, Justice.

Appellant Jared Carter was convicted of malice murder and possession of a knife during the commission of a felony in connection with the death of his grandmother, 81-year-old Valeria Mann.[1]  On appeal, Appellant alleges that the evidence presented at trial was insufficient to support his convictions, that he received ineffective assistance of counsel, and that the trial court improperly admitted

[1] Mann was killed on June 9, 2018.  On June 12, 2018, a Houston County grand jury indicted Appellant for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault (Count 3), and possession of a knife during the commission of a felony (Count 4).  Appellant's first jury trial was held on November 17 through November 19, 2020, but ended in a mistrial due to trial counsel becoming ill.  A second jury trial was held on April 6 through April 9, 2021.  The jury found Appellant guilty of all counts.  Appellant was sentenced to serve life in prison for malice murder (Count 1) and five years consecutive in prison for possession of a knife during the commission of a felony (Count 4).  All other counts were either merged for sentencing purposes or vacated by operation of law.  On April 14, 2021, Appellant's trial counsel timely filed a motion for new trial, which was amended through new counsel on December 15, 2021.  The trial court denied the amended motion on February 23, 2022.  Appellant filed a timely notice of appeal.  The case was docketed in this Court to the August 2022 term and submitted for a decision on the briefs.

hearsay testimony in violation of OCGA § 24-8-807 and the Confrontation Clause of the United States Constitution. For the reasons set forth below, we affirm.

1. Appellant argues that, as a matter of Georgia statutory law, the evidence presented at trial was insufficient to sustain his convictions under OCGA § 24-14-6, because the evidence was entirely circumstantial and did not exclude all reasonable hypotheses other than Appellant's guilt. We disagree.

The evidence presented at trial showed the following. Around 8:00 p.m. on June 9, 2018, Appellant, who was living with Mann, knocked on the door of their next-door neighbor, Bryan Martin. When Martin opened the door, he saw Appellant sitting on a bench with his elbows on his knees and his hands on his face. When Martin asked Appellant what was wrong, Appellant said that he believed Mann was dead because "she was laying on their floor and there was blood." Martin suggested calling 911, but Appellant stated that he could not because he had left his phone inside the house. Martin went inside to make the call, and Appellant followed briefly, but

then left the residence and did not respond when Martin called out for him.

When officers arrived on the scene, they found Mann lying on the floor of her living room, unresponsive, with a knife nearby covered in blood. Mann had a stab wound to her chest and had lacerations on her head. Medical personnel pronounced Mann dead at the scene. The medical examiner later determined that the cause of Mann's death was "multiple stab wounds, with other significant conditions being blunt force injuries of the head."

Officers searched the home and found in the kitchen a plastic trash bag containing shards of a ceramic crock pot. Officers saw blood stains all around the living room and found in the living room trashcan paper towels with red stains and additional ceramic crock pot pieces. Officers collected the knife, crock pot pieces, and paper towels and sent them for forensic testing. Officers found no signs of forced entry and no evidence that anything of value was taken, including Mann's wallet, which was found near her body and contained $140 in cash. Officers also found blood stains on the

3

bathroom floor and on bars of soap, indicating that someone had attempted to clean up after the stabbing.

Officers questioned Appellant, who was sitting on the sidewalk outside of the home, concerning his whereabouts during the day. Appellant stated that he ran errands with Mann in the morning and then drove her back home. Then, around 1:30 p.m., he "went for a ride to just get out of the house" in Mann's Toyota Camry to "clear [his] mind" because he was frustrated he had not found a job since moving in with Mann. Appellant was unable to specify where he had driven. Appellant stated that he returned from his drive around 2:30 p.m. and stayed in the Camry, which did not have air conditioning, because he did not want to return inside the house. Appellant claimed that he was scrolling through Instagram and YouTube and then "dozed off," sleeping through the evening thunderstorm that had occurred. When he woke up slightly before 8:00 p.m., Appellant went to the front door, but did not open it because something was blocking the door. Appellant then entered the house through the back door and saw Mann on the floor covered

4

in blood, at which point Appellant went to Martin for help.  Officers noticed what appeared to be blood on Appellant's shoes, which they collected as evidence and sent for testing.

At trial, Ann Camp, Mann's across-the-street neighbor, testified that she was on her front porch from around 11:00 a.m. until around 7:00 p.m. on June 9, 2018.  Camp testified that she saw Appellant and Mann leave the house that morning in Mann's black SUV and return sometime around 11:00 a.m.  Camp stated that Mann went directly inside the house and Appellant checked the mailbox and then went inside the house.  Camp did not see Appellant leave the house again and did not see Appellant sitting in the Camry.  Camp further testified that, around 6:00 p.m., she considered calling Mann because it looked like a bad storm was approaching and the windows of both the SUV and the Camry were rolled down.

A DNA expert testified at trial that Mann's blood was found on the knife, paper towels, and crock pot pieces.  The expert also testified that a mixture of DNA from at least two individuals, one of

5

whom was Mann, was found on a paper towel. The expert further explained that the other contributor to the mixed DNA profile was male, but that the contributor's identity could not be determined because the mixed profile contained mostly Mann's DNA. Therefore, the expert testified that "[Appellant] was excluded as a contributor to the mixed DNA profile" but that she "would expect everyone in the general population with the exception of [an] identical twin [to Mann] to be excluded." Forensic testing also confirmed that Appellant's shoes contained traces of blood. Analysts did not obtain a DNA profile from the blood found on the shoes.

The State called numerous witnesses to testify to the nature of Mann and Appellant's relationship prior to Mann's death. Chaquana Carter, a social worker employed at Houston Medical Center, with no apparent relation to Appellant, testified that on May 25, 2018, Mann visited the center to express her "concerns [and] emotions regarding her grandson." Mann told Carter that she was afraid of Appellant, wanted him out of her home, and that Appellant was verbally and emotionally abusive. Carter testified that Mann

6

asked her not to contact the police because she did not want to involve law enforcement out of concern for Appellant's safety. Carter further testified that Mann appeared frail, scared, and confused during the visit.

Detective Paul Peck testified that, on May 30, 2018, he had briefly spoken with Mann on the phone after he had received a referral from Adult Protective Services. Mann told Detective Peck that she had wanted Appellant out of her house because he was "argumentative," "disrespectful," and "hostile." Mann also revealed to Detective Peck that Appellant would "bow up" at her and refused to leave her home. Mann requested that Detective Peck refrain from investigating the situation for at least a week because she hoped to resolve the situation on her own.

Annie Pearl Fox, a close friend of Mann's, also testified at trial. Fox testified that, about six months before Mann's death, Mann expressed that she was afraid of Appellant and that Appellant had threatened to kill her. Mann also told Fox that if anything ever happened to her, "[Appellant] did it." Fox further testified that she

7

had asked Mann why Appellant was still staying with her and Mann replied, "I just don't want to put him out because he ain't got nowhere to go." Fox also testified that on June 8, 2018, the day before Mann's death, Fox arrived at Mann's home to help her clean the house and run some errands. Fox recalled cleaning the ceramic crock pot and putting it on the counter in the kitchen.

Appellant elected to testify at trial. Throughout his testimony, Appellant maintained that he had been asleep in the car when Mann was attacked. Appellant's counsel presented alternative theories on who had killed Mann — namely, that Mann was killed by an unknown assailant or by her boyfriend, Thomas Randall, who had planned to visit Mann from Connecticut the following day.

Appellant contends that the evidence at trial was insufficient to support his convictions because the circumstantial evidence presented failed to exclude every reasonable hypothesis other than his guilt. We disagree. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable

8

hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

However, "not every hypothesis is a reasonable one, and the evidence need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019) (citation and punctuation omitted; emphasis in original). "Whether alternative hypotheses are reasonable . . . is principally a question for the jury, and this Court will not disturb the jury's finding unless it is insupportable as a matter of law." *Robinson v. State*, 309 Ga. 729, 731 (1) (a) (848 SE2d 441) (2020).[2]

Here, reviewing all of the evidence presented at trial, we conclude that the jury was authorized to reject as unreasonable

---

[2] Appellant appears to conflate the standard of review for a Georgia statutory claim of insufficient evidence pursuant to OCGA § 24-14-6 with an insufficient evidence claim as a matter of constitutional due process under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). To the extent that Appellant attempts to raise a constitutional due process sufficiency claim, however, the evidence was sufficient to support his convictions. See id. at 319 (III) (B) (explaining that the proper inquiry for a constitutional due process sufficiency claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

Appellant's alternative hypotheses that an unknown assailant or Randall killed Mann. Appellant argues that no physical evidence tied him to the crime scene, focusing in particular on the DNA expert's testimony that Appellant was "excluded" as a DNA contributor to the mixed profile located on the paper towel. However, as an initial matter, "the State was not required to produce any physical evidence, as the testimony of a single witness is generally sufficient to establish a fact, and the lack of corroboration with physical evidence only goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." *Johnson v. State*, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015) (citation and punctuation omitted). Moreover, the record shows that the DNA expert testified that Mann's blood overwhelmed the mixed DNA sample and masked the other contributor to the profile so significantly that no one, other than Mann, could be identified.

The record further shows that Carter, Detective Peck, and Fox all testified at trial that Mann had recently expressed being afraid

of Appellant because he was verbally and emotionally abusive and that Mann had wanted Appellant out of her house. Camp testified that she witnessed Mann and Appellant enter the house around 11:00 a.m., that she did not see Appellant leave the house again or sit in the Camry as he had claimed, and that she did not see anyone else enter or leave the house from approximately 11:00 a.m. through 7:00 p.m.

Furthermore, officers found no signs of forced entry and noted that nothing of value had been taken from the home, making it unlikely that an unknown person broke into Mann's home and killed her. Additionally, Detective Peck testified that, during their investigation, officers eliminated all other persons of interest in Mann's killing. Consequently, the evidence was sufficient to authorize the jury to "exclude every other reasonable hypothesis save that of . . . guilt." OCGA § 24-14-6.

2. Appellant next asserts that he received constitutionally ineffective assistance of counsel on the ground that his counsel failed to object to the improper hearsay testimony of Carter and Fox at

11

trial. We are not persuaded. To succeed on a claim of ineffective assistance of counsel, a defendant must show both that "his counsel's performance was professionally deficient and that he suffered prejudice as a result." *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To prevail on the deficiency prong, the defendant must overcome the "strong presumption that [his] counsel performed reasonably" by showing that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Brown v. State*, 302 Ga. 454, 457 (2) (807 SE2d 369) (2017) (citation and punctuation omitted). If a defendant "fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

Here, Appellant has failed to show that his trial counsel acted deficiently. Before trial, counsel responded to the State's notice of intent to present hearsay testimony by filing a motion in limine

12

asserting, among other things, that Mann's out of court statements to Carter and Fox did not satisfy OCGA § 24-8-807 ("Rule 807"), also known as the residual hearsay exception. At the pretrial hearing, the trial court ruled, over counsel's objection, that Carter, Detective Peck, and Fox could testify to Mann's out of court statements pursuant to Rule 807. Trial counsel objected to that ruling, thereby preserving the issue of improper hearsay for appeal.

Appellant argues that counsel was deficient for failing to renew her objection at trial. However, "[o]nce the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal." OCGA § 24-1-103 (a). Thus, any objection trial counsel made to the hearsay testimony at trial would have been unnecessary, because that objection was already preserved. Therefore, Appellant has failed to establish that his counsel's performance was constitutionally deficient and that she performed "in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."

13

*Broxton v. State*, 306 Ga. 127, 132 (2) (829 SE2d 333) (2019) (citation and punctuation omitted). Accordingly, Appellant has failed to satisfy the deficiency prong of the *Strickland* test, and his claim of ineffective assistance fails.

3. Finally, Appellant asserts that the trial court erred by allowing Carter and Fox to testify about Mann's out of court statements pursuant to Rule 807. Appellant further argues that the testimony violated the Confrontation Clause contained in the Sixth Amendment to the United States Constitution. We are not persuaded.

(a) *Rule 807.*

After a hearing, the trial court ruled that Mann's out of court statements to Carter and Fox were admissible under the residual exception to the hearsay rule.[3] The trial court noted that Mann was unavailable to testify and found that Mann's statements contained circumstantial evidence of trustworthiness because the statements

---

[3] Appellant does not challenge Mann's out of court statements to Detective Peck.

14

were consistent and made "to multiple people on different occasions in different settings." Appellant argues that the record does not support the trial court's finding because, Appellant contends, Mann did not discuss repeated violent incidents of abuse to various family and friends and because Mann exhibited possible signs of dementia and confusion. We see no abuse of discretion.

OCGA § 24-8-807 provides in pertinent part that "[a] statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule" upon the trial court's determination that the declarant is unavailable to testify and that "the interests of justice will best be served by admission of the statement into evidence." Id. "Whether there are exceptional guarantees of trustworthiness is a determination that focuses on the *declarant* and the circumstances under which the declarant made the statement to the witness." *Miller v. State*, 303 Ga. 1, 5 (2) (810 SE2d 123) (2018) (emphasis in original). Such guarantees of trustworthiness "must be equivalent to cross-examined former testimony, statements under a belief of

15

impending death, statements against interest, and statements of personal or family history" as "[t]hese categories of hearsay have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information if the declarant is unavailable to testify." *Jacobs v. State*, 303 Ga. 245, 249 (2) (811 SE2d 372) (2018) (citations and punctuation omitted). We have previously upheld the introduction of out of court statements under the residual hearsay exception where the trial court determined that the statements were trustworthy because of the unavailable declarant's "close relationship" with the witness, see *Rawls v. State*, 310 Ga. 209, 214-215 (3) (a) (i) (850 SE2d 90) (2020), because the unavailable declarant had "no reason to concoct . . . a story," see *Tyner v. State*, 305 Ga. 326, 330 (2) (825 SE2d 129) (2019), and because the unavailable declarant made consistent statements to multiple witnesses, see *Lopez v. State*, 311 Ga. 269, 274 (2) (a) (857 SE2d 467) (2021). Although Rule 807 is "to be used very rarely and only in exceptional circumstances," this Court will not overturn a trial

court's finding that the statement is admissible under the residual hearsay exception absent a finding that the trial court abused its discretion. *Davenport v. State*, 309 Ga. 385, 390 (3) (846 SE2d 83) (2020) (citation and punctuation omitted).

Here, we cannot say that the trial court abused its discretion in admitting Mann's out of court statements. The record shows that Mann had a close relationship to Fox and revealed that she had no motive to lie to Carter and Fox about her issues with Appellant. Therefore, the trial court was authorized to conclude that there were circumstantial guarantees of trustworthiness such that it could admit Mann's out of court statements under Rule 807. Although the trial court noted concern that Mann had appeared confused and was possibly suffering from dementia when she made the out of court statements to Carter and Fox, the trial court found that her mental state did not impair the trustworthiness of her statements and uncertainty about an unavailable declarant's mental state alone is not sufficient for this Court to overturn the trial court's admissibility ruling when other factors of trustworthiness support the trial court's

exercise of discretion in applying Rule 807.  See, e.g., *Davenport*, 309 Ga. at 391 (3) (declining to overturn the trial court's admissibility ruling pursuant to the residual exception solely because the declarant had "substance abuse and mental illness issues").  Because we cannot say that the trial court abused its discretion in allowing Mann's out of court statements into evidence pursuant to Rule 807, Appellant's claim fails.

(b) *Confrontation Clause.*

Appellant also contends that the trial court erred in admitting Mann's statements because such statements were inadmissible under the Confrontation Clause in the Sixth Amendment to the United States Constitution.  The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U. S. Const. Amend. VI.  "The Confrontation Clause generally prohibits the admission of out-of-court testimonial statements made by a declarant who is unavailable for cross-examination."  *Stafford v. State*, 312 Ga. 811, 824 (5) (b) (865 SE2d 116) (2021).  "A statement

18

is testimonial if its primary purpose was to establish evidence that could be used in a future prosecution." Id. (citation and punctuation omitted). This Court has held that nontestimonial statements include statements made to law enforcement that are "intended to describe current circumstances that required immediate police action." *McCord v. State*, 305 Ga. 318, 323 (2) (a) (i) (825 SE2d 122) (2019).

Because Appellant did not object to the admission of the testimony on the ground of a Confrontation Clause violation at the trial level, we review Appellant's claim only for plain error. See *McKinney v. State*, 307 Ga. 129, 133 (2) (834 SE2d 741) (2019) (explaining that, pursuant to OCGA § 24-1-103 (d), a claim of a Confrontation Clause violation is reviewed only for plain error if no such objection is made at trial). To establish plain error, Appellant

> must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Kemp v. State*, 303 Ga. 385, 397-398 (3) (810 SE2d 515) (2018) (citation and punctuation omitted).

Here, the trial court did not commit error — much less plain error — by admitting Mann's statements into evidence, as her statements are nontestimonial and, therefore, do not trigger the protections of the Confrontation Clause. See *Johnson v. State*, 294 Ga. 86, 91 (6) (750 SE2d 347) (2013) (holding that the admission of nontestimonial hearsay did not run afoul of the Confrontation Clause). Mann's statements to Carter concerning Appellant's emotional and verbal abuse and her desire to get Appellant out of her home were not testimonial, as they "were not made to assist a future prosecution." *Denson v. State*, 307 Ga. 545, 548 (2) (837 SE2d 261) (2019). Rather, the record shows that Mann specifically requested that Carter not contact law enforcement because she did not want to incriminate Appellant.

Similarly, Mann's statement to Fox indicating that if anything ever happened to her, "[Appellant] did it," was nontestimonial as the statement was made to a friend without any expectation that the

20

statement would be later used at a trial. See *Turner v. State*, 281 Ga. 647, 651 (3) (b) (641 SE2d 527) (2007) (concluding the victim's statements "indicating that he would not commit suicide and that his wife would probably have something to do with it if he died" were nontestimonial because he was speaking with close friends without any expectation the statements would later be used at a trial). See also *Demons v. State*, 277 Ga. 724, 727-728 (4) (595 SE2d 76) (2004) (explaining that the fact a statement is made to a friend without a reasonable expectation it will later be used at trial indicates the statement is nontestimonial). Thus, Mann's statements were nontestimonial in nature. Therefore, the Confrontation Clause is inapplicable, and Appellant's claim of a Confrontation Clause violation fails.

*Judgment affirmed. All the Justices concur.*

Decided November 29, 2022.

Murder. Houston Superior Court. Before Judge Adams.

*Brownstone P.A., George W. Thomas*, for appellant.

*William M. Kendall, District Attorney, Rodrigo L. Silva, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.