NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 28, 2025

S24A1318.  BURKE v. THE STATE.

PINSON, Justice.

Dontarious Burke was convicted of malice murder and armed robbery for the shooting death of Kentrell Jones.[1] On appeal, he raises several claims of error, including a claim that his rights under the Confrontation Clause of the Sixth Amendment of the United

---

[1] Jones was shot on November 27, 2019. On March 1, 2021, a Morgan County grand jury returned an indictment jointly charging Burke and his brother, DeMarcus Burke, with malice murder, felony murder, armed robbery, and aggravated assault. Their trials were severed. After Burke alone was tried by a jury from October 19 to 20, 2021, the jury found him guilty of all counts. On October 20, 2021, the trial court sentenced him to life in prison for malice murder and a consecutive 20 years in prison for armed robbery; the remaining counts merged or were vacated by operation of law. Burke timely filed a motion for new trial on October 25, 2021, and later changed counsel and amended that motion. After hearings on May 22, 2023, and March 20, 2024, the trial court denied the motion for new trial, as amended, on May 6, 2024. Burke timely filed a notice of appeal on May 9, 2024. His appeal was docketed to the August 2024 term of court and submitted for a decision on the briefs.

States Constitution were violated, claims that his trial counsel rendered constitutionally ineffective assistance in a number of ways, and a claim that the cumulative effect of these errors requires a new trial. For the reasons set out below, each of these claims fails, so his convictions are affirmed.

1. Burke contends that his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated by the admission of testimony that police got information critical to their investigation from two non-testifying witnesses, Monique Nesbitt and Burke's brother DeMarcus. Because Burke did not raise this Confrontation Clause objection at trial, we review it for plain error. See *Carter v. State*, 315 Ga. 214, 222 (3) (b) (881 SE2d 678) (2022). To establish plain error, a defendant must show that an error occurred, was not affirmatively waived, was clear and not subject to reasonable dispute, and affected his substantial rights. See id. If that showing is made, then we consider whether the error "seriously affected the fairness, integrity or public reputation of judicial proceedings" and requires reversal. Id.

(a) The evidence at trial showed that after Jones was shot, two men were seen getting into a car with Nesbitt, who drove away from the crime scene. Nesbitt came to the police station later that night and spoke with GBI Special Agent Eric Pipkin and Madison Police Department Detective Wes Thompson. Agent Pipkin testified that Nesbitt was cooperative and gave a statement. When Detective Thompson was asked at trial whether Nesbitt was "cooperative and g[a]ve useful information," he answered, "Somewhat, yes." Agent Pipkin and Detective Thompson also reviewed evidence from the crime scene, including a surveillance video that was admitted into evidence and played for the jury. They then got a warrant for Burke's arrest.

The morning after the shooting, Burke's brother, DeMarcus, came to the police station and gave a statement to Detective Thompson. Detective Thompson testified that DeMarcus was "somewhat" cooperative, and Agent Pipkin said he provided a statement.

Two days after the shooting, Agent Pipkin and Detective Thompson spoke with Nesbitt and DeMarcus again, and each gave

3

more information. Agent Pipkin testified that DeMarcus gave police information about a social media message that police then used to obtain Burke's location. From there, investigators went to a home in Monroe, Georgia where they found Burke "hiding under a bed" and took him into custody.

Nesbitt and DeMarcus did not testify at trial, and their statements to the police were not introduced at trial.

(b) The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. Among other things, that guarantee means that a statement made out of court that is "testimonial" generally may not be admitted if whoever made the statement is not available for cross-examination by the defense. See *Carter*, 315 Ga. at 222 (3) (b).

Burke contends that Agent Pipkin's and Detective Thompson's testimony — that they spoke to Nesbitt and DeMarcus and then obtained an arrest warrant and information about Burke's location based on those respective interviews — violated his rights under the

Confrontation Clause. Although no statements from Nesbitt or De-Marcus were admitted, Burke reasons that Agent Pipkin and Detective Thompon's testimony *implied* that Nesbitt and DeMarcus made statements implicating Burke, and he contends that the Confrontation Clause guaranteed his right to cross-examine them about those implied statements.

Burke has not established plain error because he has not shown that it was clear and obvious beyond reasonable dispute that admitting this testimony violated the Confrontation Clause. An error is clear and obvious beyond reasonable dispute only if the error is "plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *Sconyers v. State*, 318 Ga. 855, 859 (1) (901 SE2d 170) (2024) (quoting *Grier v. State*, 313 Ga. 236, 242 (3) (b) (869 SE2d 423) (2022) (punctuation omitted)). Burke has not cited any federal or Georgia decision that supports his theory that it violates the Confrontation Clause to introduce testimony from which a jury could *infer* that a testimonial statement was made by an absent witness, and neither this Court nor the United States Supreme

Court has squarely addressed such a theory. Cf. *Myrick v. State*, 306 Ga. 894, 902 (3) (b) (834 SE2d 542) (2019) (assuming that the jury understood that law enforcement was referring to statements by un-available witnesses and deciding that the statement was not meant to establish the truth of the matter asserted); *Allen v. State*, 296 Ga. 785, 788 (5) (770 SE2d 824) (2015) (noting that the detective did not identify the person who "gave up" the defendant and that the sub-stance of this person's statements were not put before the jury, and going on to reject the defendant's Confrontation Clause argument because the challenged statements were not offered to establish the truth of the matter asserted). Without offering controlling precedent to support his theory, Burke has not shown that the alleged error was obvious and not subject to reasonable dispute. See *Sconyers*, 318 Ga. at 859 (1); *Carter*, 315 Ga. at 222 (3).

2. Burke contends that his trial counsel rendered constitution-ally ineffective assistance in several ways. To establish ineffective assistance, Burke must show both that counsel's performance was professionally deficient and that he was prejudiced as a result. See

6

*Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Trial counsel's performance was deficient if it was "objectively unreasonable . . . considering all the circumstances and in the light of prevailing professional norms." *Butler v. State*, 313 Ga. 675, 683 (4) (872 SE2d 722) (2022) (citation and punctuation omitted). And to prove prejudice under *Strickland*, a defendant must establish "a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Scott v. State*, 317 Ga. 218, 221-222 (2) (892 SE2d 744) (2023) (citation and punctuation omitted). We address each of Burke's five claims of ineffective assistance in turn.

(a) Burke contends that his trial counsel rendered ineffective assistance by not objecting on Confrontation Clause grounds to the testimony discussed in Division 1. He has not shown that his counsel's performance was constitutionally deficient. As we concluded in Division 1, the basis for this objection is not clearly supported under current law. And an attorney is not deficient for failing to "make an objection that would call for an extension of or a change in the law."

*Williams v. State*, 318 Ga. 83, 95 (5) (d) (896 SE2d 109) (2024) (citing *Lowe v. State*, 314 Ga. 788, 796 (2) (b) (879 SE2d 492) (2022); *Rhoden v. State*, 303 Ga. 482, 486 (2) (a) (813 SE2d 375) (2018)).

(b) Burke contends that his trial counsel rendered ineffective assistance by failing to object to hearsay. Bianca Keeley, a resident of the neighborhood where the shooting happened, testified at trial that she heard other neighbors say that someone named "Debo" shot Jones (and another witness testified at trial that Burke went by that nickname); she then told police that "Debo" was the shooter. Burke contends that Keeley's statement was hearsay.

Burke has not established that trial counsel's performance was deficient. Keeley's statement appears to be hearsay, see OCGA § 24-8-801, and no exception allowing its admission is apparent from the record, see OCGA §§ 24-8-803, 24-8-804. But attorneys need not raise every conceivable objection to be effective advocates; indeed, not objecting can often be part of a reasonable trial strategy if the objectionable evidence, for example, undermines an unfavorable witness's testimony, see, e.g., *Richards v. State*, 306 Ga. 779, 782 (2)

8

(a) (833 SE2d 96) (2019) (failing to object to hearsay was reasonable trial strategy and not deficient performance in part because allowing the hearsay statements "sow[ed] doubt as to what occurred on the night in question"), or supports the overall defense strategy, see, e.g., *Sawyer v. State*, 308 Ga. 375, 386 (2) (c) (839 SE2d 582) (2020) (failing to object to hearsay was reasonable trial strategy where the statement was used to support the overall defense strategy and emphasize that a witness had lied about the victim's injuries). Just so here. After Keeley testified that she told police what she had heard from others — that "Debo" was the shooter — defense counsel cross-examined Keeley about this statement and elicited testimony that, on the night of the shooting, she only saw "two shadows" run by after she heard gunshots, did not and could not identify either of the people that ran by, did not know "Debo," and could only testify to what she heard other people say about the shooter. It was not unreasonable to believe that this course of action would effectively undermine Keeley's testimony that "Debo" was the shooter and support the overall defense strategy by emphasizing that the police focused their

9

attention on Burke from the outset of their investigation based only on hearsay. Under these circumstances, we cannot say that no reasonable attorney would have done the same instead of objecting to the hearsay, so this claim fails. See *Sawyer,* 308 Ga. at 386 (2) (c); *Richards*, 306 Ga. at 782 (2).

(c) Burke contends that his counsel rendered ineffective assistance because counsel failed to object to a series of questions the State asked Burke on cross-examination about whether the police "believed very strongly" that he killed Jones based on interviews they had done. Burke argues that trial counsel should have objected because the questions called for speculation.

Even assuming that trial counsel performed deficiently by not objecting to these questions, Burke has not established prejudice. See *Sawyer v. State*, 308 Ga. 375, 384 (2) (b) (839 SE2d 582) (2020). A witness generally may not testify about a subject if he lacks personal knowledge about what he is asked about. See OCGA § 24-6-602. But even when a defendant is asked about a subject on which

10

he lacks personal knowledge, the defendant generally cannot establish that he was prejudiced by the resulting admission of improper evidence if it is cumulative of other, properly admitted evidence. See *Sawyer*, 308 Ga. at 384 (2) (b). And here, Burke's affirmative responses were merely cumulative of the testimony of Agent Pipkin and Detective Thompson that the police had identified Burke as the primary suspect soon after their interviews. Burke has not established that trial counsel's failure to object to these questions prejudiced his defense.

(d) Burke contends that his counsel rendered ineffective assistance by failing to object to burden-shifting during the prosecutor's closing argument. Burke's counsel presented closing arguments first and argued, in relevant part, that the State had failed to meet its burden of proving his guilt because it had not called Nesbitt as a witness nor explained her absence. The prosecutor then referred to Nesbitt's absence at trial in his own closing and asked rhetorically whether the fact that she was not charged was "a reasonable doubt." He then pointed to evidence that she had "lied to the detectives" and

asked rhetorically, "So do we call her as a witness when she lied to the detective about what she did? Would she really have added anything?" The prosecutor then said that Nesbitt was not "hidden" and "was on the witness list." Burke contends that these arguments "implied" to the jury that if Burke wanted to address a lack of evidence about Nesbitt's involvement, he should have called her to testify himself.

In every criminal trial, it is the State's burden to prove the guilt of the defendant beyond a reasonable doubt. See *Cheddersingh v. State*, 290 Ga. 680, 681 (2) (724 SE2d 366) (2012). To that end, it is improper for a prosecutor to suggest that it was the defendant's burden to prove any fact and that he failed to do so. See, e.g., *Miller v. State*, 275 Ga. 730, 739 (7) (571 SE2d 788) (2002). See also *United States v. Simon*, 964 F2d 1082, 1086 (IV) (B) (11th Cir. 1992) (explaining that the Supreme Court's decisions concerning the burden of proof required to satisfy due process, see *Sandstrom v. Montana*, 442 U.S. 510 (99 SCt 2450, 61 LE2d 39) (1979) and *In re Winship*,

397 U.S. 358 (90 SCt 1068, 25 LE2d 368) (1970), preclude prosecutors from making arguments that "suggest that the defendant has an obligation to produce any evidence or to prove innocence"). On the other hand, prosecutors are otherwise given generally wide latitude during closing arguments, and a prosecutor may use closing arguments to rebut points made by the defense or explain the State's evidence. See *Pyne v. State*, 319 Ga. 776, 782, 785 (2) (906 SE2d 755) (2024) (citing *Blaine v.* State, 305 Ga. 513, 519 (2) (826 SE2d 82) (2019)). To determine whether an argument crosses the line from permissible rebuttal or explanation of the evidence to the improper placement of a burden of proving some fact on the defendant, we look to the prosecutor's argument as a whole, as well as the charge given to the jury on the burden of proof. See id.

Here, the prosecutor's closing argument did not shift the burden of proof to Burke. The prosecutor's remarks about Nesbitt were plainly made in rebuttal of Burke's closing argument that there was reasonable doubt without Nesbitt's testimony: rather than placing the burden on Burke to call Nesbitt himself, they just explained, in

13

response to Burke's argument why the State chose not to call her. See *Pyne*, 319 Ga. at 785 (2). And the jury was properly instructed that the burden of proof rested solely with the State and "[t]here was no burden of proof upon [Burke] whatsoever"; that "reasonable doubt" is "a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of evidence, or a conflict in the evidence"; and that the State's failure to prove every essential element of the charged crime beyond a reasonable doubt required the jury to acquit Burke. See id. at 786 (2). Considered in their full context, the remarks here fell within the "wide latitude" given to prosecutors during closing argument and did not shift the burden of proving any fact to Burke. Because the prosecutor's remarks were not improper, Burke has not established that counsel performed deficiently by not objecting to them. See *Thompson v. State*, 318 Ga. 760, 767 (4) (b) (900 SE2d 607) (2024).

(e) Burke contends that his counsel operated under an actual conflict of interest and provided ineffective assistance when he stipulated to where the gun introduced at trial (and opined by experts

14

to be the murder weapon) was found and did not move for the appointment of conflict counsel because the gun was found with a former client.

(i) Before trial, Burke's counsel learned that the gun the State intended to prove was the murder weapon had been found in the possession of counsel's former client, Marco Burgos. After learning this, counsel filed a motion in limine that sought to exclude Burgos's testimony because counsel believed he would have to withdraw as Burke's counsel if the State called Burgos as a witness.[2] As a result, the prosecutor indicated that he would not call Burgos as a witness, and instead the prosecutor and Burke's counsel agreed to a stipulation, which was read to the jury, that the gun submitted as evidence in Burke's case was found on September 5, 2020, in Burgos's possession and had been in the custody of the GBI since then.

During his interview with Agent Pipkin and Detective Thompson, Burke told them that he shot Jones with a 9-millimeter gun and that he had thrown the gun into a lake between Madison and

---

[2] Counsel asked, in the alternative, to be allowed to withdraw.

Greensboro after the shooting. But at trial, Burke testified that he lied about everything in the interview, had not shot Jones, and had made a "real good guess" that Jones was shot with a 9-millimeter firearm because it was a "common" type of gun. A GBI firearms examiner testified at trial that the gun found in Burgos's possession was a Taurus 9-millimeter pistol and connected the Taurus to the three cartridge cases collected at the scene of Jones's death and the three bullets recovered from Jones's body during the autopsy.

At the hearing on Burke's motion for new trial, his trial counsel testified that any theory about how Burgos got the gun was "just pure speculation" but, in counsel's opinion, there was "no way" that Burgos was the shooter, and counsel did not know whether Burke gave Burgos the gun.

(ii) As part of the Sixth Amendment guarantee of the effective assistance of counsel in criminal prosecutions, a defendant has the right to representation that is free of an actual conflict of interest. See *Adams v. State*, 317 Ga. 342, 350 (2) (893 SE2d 85) (2023). To prevail on a claim that a conflict of interest worked a denial of the

effective assistance of counsel, a defendant who failed to object to the conflict at trial must show that "an actual conflict of interest adversely affected his lawyer's performance." *White v. State*, 298 Ga. 416, 418 (2) (782 SE2d 280) (2016). An "actual conflict of interest" is not "something separate and apart from adverse effect," but instead "means 'a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.'" Id. (quoting *Mickens v. Taylor*, 535 U.S. 162, 171-172 (II) n.5 (122 SCt 1237, 152 LE2d 291) (2002) (emphasis in original)). And "mere speculation about potential conflicts of interest cannot establish that a conflict significantly and adversely affected counsel's performance at trial." *Moss v. State*, 312 Ga. 202, 210 (2) (c) (ii) (862 SE2d 309) (2021). Even when, as here, defense counsel elects not to call a witness whom he previously represented in a separate criminal matter, the defendant must show that the potential conflict had an adverse effect on counsel's representation, rather than being the result of a reasoned trial strategy, to establish an actual conflict of interest. See *White*, 298 Ga. at 419

17

(2) (counsel's failure to call her former client as a witness was a matter of trial strategy rather than the result of an actual conflict of interest). See also *Barrett v. State*, 292 Ga. 160, 175 (3) (c) (2) (733 SE2d 304) (2012) (defendant failed to establish that trial counsel had an actual conflict of interest because he failed to show that counsel's decision not to call a witness whom she represented in a separate criminal case was anything but a reasonable trial strategy or that counsel would have acted differently but for the potential conflict of interest).

Burke has not shown that the potential conflict here had an adverse effect on trial counsel's representation of Burke. He contends that the potential conflict had an adverse effect on the representation because it caused counsel to agree to stipulate to where the gun was found rather than presenting Burgos's testimony, which he says would have suggested Burgos as an alternate suspect to the jury. But Burke has not presented any evidence, or even made any argument, about what Burgos would have said if he had testified, and he only speculates that Burgos's testimony would have been

18

more helpful to his case than the stipulation alone. On the record before us, we know only that the gun the State's experts opined was used to shoot Jones was found in Burgos's possession ten months after the shooting, and that information was presented to the jury through the stipulation. And trial counsel testified that Burgos was not a viable alternative suspect based on the information he had — an assertion that Burke has not rebutted with any evidence of how Burgos would have testified if he had been called as a witness at trial. And other than speculation about what Burgos may have testified to, Burke has not offered any testimony or evidence that would have been introduced in the absence of the stipulation.

Because Burke has not met his burden to show that the potential conflict had an adverse effect on counsel's representation, his claim that trial counsel had an actual conflict fails. See *White*, 298 Ga. at 419 (2); *Barrett*, 292 Ga. at 175 (3) (c) (2).

3. Burke contends that the cumulative effect of the errors he raises on appeal warrants a new trial. See *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020). But Burke has failed to establish more

than one error at trial, so there is nothing to assess cumulatively and this claim thus fails. See *Blocker v. State*, 316 Ga. 568, 583 (5) (889 SE2d 824) (2023).

*Judgment affirmed. All the Justices concur.*