**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 4, 2026**

# In the Court of Appeals of Georgia

A25A2000. COX v. THE STATE.

DAVIS, Judge.

Brandon Cox appeals after a jury convicted him of disorderly conduct, three counts of felony obstruction of an officer, and one count of misdemeanor obstruction of an officer.[1] Cox argues that (1) the trial court erred by failing to instruct the jury that he had the right to resist an unlawful arrest; (2) the trial court erred by admitting into evidence his sister's criminal conviction for the purpose of impeaching his wife; and (3) his trial counsel provided ineffective assistance by failing to object to certain statements the State made during opening and closing arguments. Upon a careful review of the record, we affirm.

---

[1] See OCGA §§ 16-10-24(a), (b); 16-11-39(a)(1).

Viewed in the light most favorable to the jury's verdicts,[2] the record at trial showed that a law enforcement officer with the Rincon Police Department performed a traffic stop on a vehicle that was being driven in an erratic manner that suggested that the driver could have been driving while impaired. After the officer signaled the car to stop, the driver, Christy Cox, eventually pulled into the driveway of a residence. While the officer was interviewing Christy, Cox (who is Christy's brother) emerged from the residence yelling and screaming. Cox came toward the officer while "acting in a very, very aggressive manner," saying things like "Try me, try me!" and "I'll kick your ass."[3]

Additional officers were called to the situation, and Cox continued to act in a "tumultuous manner." Eventually, Cox walked back towards his house, and the officers were concerned that he was attempting to retrieve a weapon. The officers placed Cox in handcuffs, but Christy as well as Cox's wife, Mariam Odetunde, came over and attempted to pull the officers off of Cox. During the struggle, one of the

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] Body camera footage of the incident was introduced into evidence and played for the jury.

officers was injured when he was pushed off of Cox's porch. As Cox was restrained and placed into a patrol car, he kicked two other officers.

A grand jury indicted Cox on three counts of felony obstruction of an officer (OCGA § 16-10-24(b)), one count of misdemeanor obstruction of an officer (OCGA § 16-10-24(a)), and one count of disorderly conduct (OCGA § 16-11-39(a)(1)). At trial, the jury found Cox guilty of all charges, and the trial court sentenced Cox to a total of fifteen years, with ten to serve in confinement. Cox filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.[4]

1. Cox first argues that the trial court erred by denying his request to charge the jury that he had the right to resist an unlawful arrest. We discern no error in the jury's instructions because this principle was already covered by the court's instructions.

"Where, as here, a party has timely objected to a trial court's decision as to a jury instruction, we review that decision de novo." *Haygood v. State*, 338 Ga. App. 189, 193(2) (789 SE2d 404) (2016). "To determine whether a trial court erred in failing to give a requested jury instruction, we must read and consider the instructions as a whole. Where the jury charge, taken as a whole, sufficiently instructs the jury on

---

[4] We DENY the State's motion to dismiss this appeal due to Cox's untimely filed brief.

3

a point of law, a trial court does not err in failing to give an unnecessary, additional instruction." *Payne v. State*, 318 Ga. 249, 257(4) (897 SE2d 809) (2024) (citation modified). Therefore, "[w]hen a requested jury instruction adds no essential point of law to the existing instructions, it is not error for the trial court to decline to give it." *Eubanks v. State*, 317 Ga. 563, 580(3)(a) (894 SE2d 27) (2023).

We conclude that the trial court did not err by declining to give Cox's requested instruction that he had the right to resist an unlawful arrest. "The two elements of felony obstruction are ... (1) knowingly and wilfully offering or doing violence to an officer (2) in the lawful discharge of that officer's duties, whereas the two elements of the lesser included offense of misdemeanor obstruction are (1) knowingly and wilfully resisting, obstructing or opposing an officer (2) in the lawful discharge of that officer's duties." *Haygood*, 338 Ga. App. at 193(2); see OCGA § 16-10-24(a), (b). In the context of an obstruction of justice prosecution, "[t]his Court has held that an argument that the arrest was unlawful does not state an affirmative defense to a charge of obstruction. Rather, that argument is an assertion that the state has failed to prove an essential element of the offense—a lawful arrest." *Long v. State*, 261 Ga. App. 478, 479(1) (583 SE2d 158) (2003). Thus, because the trial court here instructed the jury

4

that it had to find that the law enforcement officers were in the lawful discharge of their duties, it necessarily informed the jury that, to find Cox guilty of obstruction, it had to find that the officers were in the course of performing a lawful arrest, and so no separate jury instruction on that point was necessary. See id. To the extent that Cox argues that the trial court's instruction was incomplete or insufficient to instruct the jury as to what it actually means for an officer to be in the lawful discharge of his duties, we note that he argued to the jury at length during closing argument as to what an officer's "lawful discharge of his duties" meant and that resisting an unlawful arrest was a defense to the charges. See *Wright v. State*, 365 Ga. App. 288, 292(1)(c) (878 SE2d 137) (2022) (finding no harm in a jury instruction that used potentially confusing medical terminology because that terminology was explained during trial).

Cox argues that our case law in this area, including *Long*, has been abrogated by the Georgia Supreme Court's decision in *Glenn v. State*, 310 Ga. 11 (849 SE2d 409) (2020), but we ultimately disagree. In *Glenn*, the Georgia Supreme Court concluded that a person has a common-law right to use proportionate force to resist an unlawful arrest and that no provision in the Georgia Constitution or the Georgia Code has displaced that right. 310 Ga. at 24–30(1)(c). *Glenn* did not involve the question of jury

instructions in an obstruction of justice prosecution but instead arose in the context of a probation revocation hearing contending that a defendant had committed the felony offense of interference with government property. Id. at 14-15. Cox directs us to the part of the Georgia Supreme Court's analysis where it concluded that the right to resist an unlawful arrest "[stood] on such footing" as justification defenses, which are affirmative defenses that would require a separate jury charge. Id. at 27–28(1)(c). Cox ignores, however, the Supreme Court's discussion of how the right to resist an unlawful arrest interacts with the obstruction statute. The Supreme Court reaffirmed that "detaining or arresting a person without authority to do so under the law does not constitute the lawful discharge of the duties of a law enforcement officer, and, therefore, one who resists an unlawful arrest or detention does not commit the offense of obstruction[,]" id. at 25(1)(c), and, in so doing, it cited *Long* for the proposition that an unlawful arrest argument is an argument that the State has failed to prove an essential element of the offense, not a separate affirmative defense. Id. at 25(1)(c) n.28. Thus, we cannot say that *Glenn* abrogated *Long* when it cited the case approvingly on this point.

Accordingly, we conclude that the trial court did not err by declining to give Cox's suggested jury instruction on resisting an unlawful arrest.

2. Cox next argues that the trial court erred by allowing the State to introduce a copy of Christy's conviction for obstruction of an officer arising from the same incident. Cox argues that it was improper for the trial court to also admit Christy's conviction as impeachment character evidence under OCGA § 24-6-609 during the State's cross-examination of Odetunde because Christy was not the testifying witness. He also argues that the introduction of the conviction violated his Confrontation Clause rights because Christy did not testify at trial. We conclude that, even assuming the admission of Christy's conviction was error, it was nevertheless harmless.

At trial, Cox called Odetunde as a witness to testify in his favor. During the State's cross-examination, Odetunde averred that she and her husband "did nothing wrong." The State followed up, asking her, "[b]ut you – you obstructed the officers as well, didn't you?" to which Odetunde responded, "Is that your opinion? Fact? What are you gonna base on that question?" At that point, the State introduced a certified copy of Odetunde's conviction for obstruction arising from the same incident, and, some questions later, it also introduced a certified copy of Christy's

7

conviction for obstruction over Cox's objection, also arising from the same incident. The State then asked Odetunde if Christy had also pled guilty to obstruction, and Odetunde replied, "Correct."

(a) *Admission of Evidence.* "We review a trial court's rulings admitting or excluding evidence for an abuse of discretion." *Sinkfield v. State*, 318 Ga. 531, 545(6) (899 SE2d 103) (2024). However, "[w]e will reverse a conviction for a trial court's evidentiary error only if it was harmful. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdicts, and in conducting that analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done." Id. (quotation marks omitted).

OCGA § 24-6-609(a)(1) provides, in relevant part, that evidence that a witness was convicted of a felony shall be admissible to attack the witness' credibility "if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused." Evidence of a prior felony conviction admitted under this Code section "is intended to afford the jury a basis to infer that the witness's character is such that [s]he would be less likely than the average trustworthy

8

citizen to be truthful in [her] testimony." *Spires v. State*, 357 Ga. App. 440, 447(4) (850 SE2d 854) (2020) (quotation marks omitted). OCGA § 24-6-609 thus allows the introduction of a criminal conviction as a general attack on the credibility of the witness. See id. ("The introduction of evidence of a prior crime [under OCGA § 24-6-609] is ... a general attack on the credibility of the witness."). We note that, by contrast, the State contends that Christy's conviction was instead properly introduced to specifically rebut Odetunde's statement that no obstruction had occurred, and so the State argues that the introduction of Christy's conviction was properly admitted through impeachment by disproving a fact. See OCGA § 24-6-621 ("A witness may be impeached by disproving the facts testified to by the witness.").

Putting aside the question of whether Christy's conviction was properly admitted under either statute, we conclude that its introduction here was harmless. First, the jury saw video footage and heard testimony about the incident, and the jury was therefore aware of Christy's actions. Additionally, any probative or impeachment value that Christy's conviction provided was ultimately cumulative of Odetunde's conviction — essentially, once the State admitted Odetunde's conviction, the damage was done to shatter her credibility. See *Burse v. State*, 170 Ga. App. 775, 776(2) (318

SE2d 511) (1984) (finding that any error in allowing prosecutor to cross-examine defendant about a defense witness' criminal record was harmless because by the time the testimony occurred, the defense witness "had already been discredited"). And considering the issue in light of the strong evidence the State presented in the form of testimony and body camera footage of the incident, we cannot say that the admission of Christy's conviction made such a meaningful difference that it likely affected the outcome of the trial below. *Johnson v. State*, 307 Ga. App. 791, 793 (706 SE2d 150) (2011) (concluding that any error in admitting a prior conviction for impeachment purposes was harmless in light of the overwhelming evidence of the defendant's guilt).

(b) *Confrontation Clause.* Cox also argues that the introduction of Christy's conviction violated the Confrontation Clause as established by the United States Supreme Court's decision in *Kirby v. United States*, 174 U. S. 47 (19 SCt 574, 43 LEd 890) (1899). Cox did not raise a Confrontation Clause challenge at trial, and so we will address this challenge only for plain error. *Carter v. State*, 315 Ga. 214, 222(3)(b) (881 SE2d 678) (2022).

> To establish plain error, [Cox] must point to an error that was not affirmatively waived, the error must have been clear and not open to

> reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

Id. (quotation marks omitted). For the reasons stated in Division 2(a), Cox cannot show that any alleged Confrontation Clause violation affected his substantial rights, and so he cannot show plain error in this regard. See *Gates v. State*, 298 Ga. 324, 327(3) (781 SE2d 772) (2016) ("[B]eyond showing a clear or obvious error, plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below.") (quotation marks omitted).

3. Cox finally argues that his trial counsel provided ineffective assistance by failing to object to many allegedly improper statements during the State's opening and closing arguments. We conclude that counsel did not perform deficiently by failing to object to these statements.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his trial attorney's performance was deficient and that this deficient performance prejudiced his defense. Deficient performance requires a showing that trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Prejudice requires demonstrating a reasonable probability that, but for counsel's errors, the outcome of the trial would

11

have been different. If either … prong is not met, a reviewing court need not examine the other prong.

*West v. State*, 369 Ga. App. 291, 292–93 (893 SE2d 179) (2023) (citation modified).

> In analyzing whether defense counsel's failure to object to potentially improper argument by the prosecutor constituted deficient performance, our task is to determine whether, in the throes of the closing argument, no reasonable attorney, listening to the inflection of the speaker's voice and judging the jurors' reactions, would choose to remain silent instead of objecting and calling attention to the improper argument. Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them. Thus, when counsel articulates a strategic reason for not objecting, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

Id. at 295(b) (citation modified).

Cox claims that his attorney was ineffective for failing to object to the following statements by the State during opening arguments:

> - My initial thought when I looked at [this] case, you know, what I was gonna say was that what got us here was a traffic stop. That's not really what got us here. What got us here started a long time before that with this defendant because we have a defendant who just doesn't like police.

12

He doesn't like police, he doesn't respect police, he just has a problem with police ...

- That's when the women run up on the porch and start trying to pull the officers off of the Defendant. And we heard they were other Defendants, and I would say that's what that refers to. They're not here. They're not on trial today, so that's not to be considered. It's just what this Defendant did right now. But they're trying to pull the officers off.

Cox also argues that trial counsel should have objected to the following statement during the State's closing argument:

- And as much as this has been a short trial, a one-day trial, it's not a pointless trial because your verdict in this case still has meaning. It's heard not just by this Defendant, not by the people in the courtroom, but other people in our community of: Is this the type of behavior that we want to support here? Is this – is this okay? Is it okay for people to think that they can curse out the police, threaten the police, resist the police, kick the police and fight with the police and that's just okay? And it is not.

In Cox's view, these statements together were impermissible and objectionable because they were not arguments based on the facts and the law but instead constituted an improper attempt to attack his character and the character of his family. At the motion for new trial hearing, Cox's trial counsel testified that he purposefully

did not object to these statements. As for the first statement that Cox just "doesn't like police," counsel stated that he was aware that body camera footage was going to be introduced showing Cox yelling at the police, and counsel stated that this statement aligned with his trial strategy to show that the police had a history with Cox and, as a result, the police department in this incident was "harassing" Cox and presumably had a motive for antagonizing him and his family. Counsel similarly stated that he did not find the statement about Cox's family objectionable because the body camera footage also showed them pulling the officers off of Cox and because Odetunde testified at trial about her actions. Finally, counsel testified that he did not object to the State's "conscious[ness] of the community" argument because he believed that it was allowed under case law.

Considering the broad deference we give to trial counsel on matters of trial tactics and strategy, we cannot deem trial counsel's decisions on these points to be unreasonable. As recounted above, evidence was produced at trial that supported the prosecutor's statements during opening arguments. And as for the State's appeal to the community's morals during its closing argument, we have regularly concluded that such arguments are permissible so long as they do not touch on other impermissible

14

arguments, such as future dangerousness. See *McClain v. State*, 267 Ga. 378, 385(4)(a) (477 SE2d 814) (1996) ("A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished."). See also *Smith v.* State, 296 Ga. 731, 736–37(2)(c) (770 SE2d 610) (2015) (finding no ineffective assistance of counsel for failing to object to State's argument that "crime is a cancer that eats away at society," and that the jury should "stand in the way of injustice"); *Spencer v. State*, 287 Ga. 434, 439–40(4) (696 SE2d 617) (2010) (finding no ineffective assistance of counsel for failing to object to State's argument that "[t]his is your community and these are your streets, and you can say yes to this or you can say no to this. ... Say no to this on behalf of our community."); *Hamlette v. State*, 353 Ga. App. 640, 645–46(2) (839 SE2d 161) (2020) (concluding that State's remarks were a general plea to the jury to enforce the law for the safety of the community and were not an argument that the defendant represented a future danger to society).

We therefore conclude that Cox has failed to show that his trial counsel was ineffective.

Accordingly, we affirm Cox's convictions and the denial of his motion for new trial.

*Judgment affirmed. Rickman, P. J., and Gobeil, J., concur.*